# WILLIAM P. SMITH and CHARLES A. DAVIS *vs.* ROBERT A. THURSBY.

## Construction of the Constitution of 1867 — Appointment of Constables.

On the 18th of November, 1865, under section 47, of Article 4, of the Constitution of 1864, A. was appointed by the Mayor and City Council of Baltimore, a constable for the nineteenth ward of said city, to serve for two years, and was duly commissioned and qualified. On the 8th of October, 1867, while holding said office, he was re-appointed. The Mayor and City Council of Baltimore, elected under the Constitution which went into effect on the 5th of October, 1867, considering that the appointment of A., by their predecessors, was invalid, on the 21st of November, following, appointed B. to said office, and he was commissioned and qualified. HELD:

That under section 3, of Article 15, of the Constitution of 1867, A. was continued in office, not until the end of the term for which he had been originally appointed, but until he should be superseded, or, in other words, until a new appointment should be made, in the manner and

Smith and Davis *vs.* Thursby.

by the authority prescribed in said Constitution for the appointment of constables. And that after the new Constitution went into effect, A. might, at any time, have been displaced or superseded by the appointment and qualification of another in his place, or by his own reappointment, in the manner and for the term prescribed in said Constitution.

The Mayor and City Council of Baltimore, in office at the time of the adoption of the Constitution of 1867, were by virtue of the 3d section of Article 15, of said Constitution, continued in office until superseded by the election and qualification of their successors, as provided in the 11th Article, that is from the 5th of October, until the first Monday of November, and were during that period, charged with the duties, and clothed with all the powers appertaining to their offices, prescribed and conferred by said instrument.

The appointment of A. to the office of constable for the nineteenth ward, on the 8th of October, 1867, by the Mayor and City Council of Baltimore, was a rightful exercise of constitutional power, and the same was valid.

The effect of the adoption and promulgation of the Constitution of 1867, was to repeal and abrogate the pre-existing Constitution; and therefore all officers whether continued in office by its provisions or elected under it, could hold and exercise only those powers which it authorized and in the manner it prescribed.

Where the new Constitution however by its terms, continues in force or operation, any provisions of the old, such provisions are made *pro hac vice*, parts of the new.

In construing the Constitution, the duty of the Court is to interpret it, according to its language, and where that is plain and unambiguous, they are not at liberty to conjecture what may have been the possible intentions of its framers, not expressed in its language.

APPEAL from the Superior Court of Baltimore City.

The appellants filed their petition in the Superior Court of Baltimore city, on the 29th November, 1867, claiming to be the duly appointed, commissioned and qualified constables of the nineteenth ward of said city, and alleging that the appellee, was unlawfully exercising said office, and praying for a writ of *mandamus*, commanding him to vacate the same. Upon this petition, a rule to show cause was granted, and on the 4th of December, 1867, the appellee filed his answer to the same. The parties then agreed, in writing, to the

following statement of facts: On the 8th of October, 1867, the appellants were appointed by the Mayor and City Council of Baltimore, constables for the nineteenth ward of said city, for two years. They were commissioned, gave bond, and took the oaths of office prescribed by the Constitution and the laws, and entered upon the discharge of the duties pertaining to the said office of constable. They had also on the 18th November, 1865, under section 47, Article 4, of the Constitution of 1864, been duly appointed and commissioned: Smith as a constable for the fifteenth ward, and Davis as a constable for the nineteenth ward, to serve for two years from the date of their commissions, or until their successors were appointed and qualified; they had bonded and qualified according to the existing Constitution, and held office as constables on the 8th of October, 1867, and had not resigned said office at that time, nor at any time since. The Mayor and City Council of Baltimore, elected under the provisions of the Constitution of 1867, on the 21st of November, appointed, and the Mayor commissioned the appellee as constable of the nineteenth ward of said city, to hold the said office for two years from the said 21st November, 1867, and he qualified and bonded under the present Constitution and Laws, and thereupon entered on the discharge of his duties as such constable. Upon the petition and answer and agreed statement of facts, the Court, after argument of counsel on both sides, passed an order dismissing the petition, and from this order the present appeal was taken.

The cause was argued before BARTOL, C. J., NELSON, STEWART, BRENT, GRASON and MILLER, J.

*Milton Whitney* and *William S. Waters* for the appellants, argued:

First. As to the reason assigned in the answer, that the provision for appointing constables, is by the old and the new Constitutions identical; and that forasmuch as the appellants

Smith and Davis *vs* Thursby.

were appointed constables under the old Constitution, on the 18th November, 1865, for two years, and as that term had not expired when the appellants were appointed on the 8th October, 1867, the right to appoint under the new Constitution had not then accrued, and that such right did not accrue until after the 18th November, 1867, when the old term would run out, and that this term could not be anticipated.

The Constitution is a law, and the only distinction between it and other laws is, that it is a paramount law. The effect of the adoption of the new Constitution upon the former Constitution is, to abrogate and annull it. The body of laws however remain, except in so far as they are expressly or impliedly repealed by the new Constitution. *The Commonwealth vs. Collins,* 8 *Watts,* 336, 349 ; *Cass vs. Dillon,* 2 *Ohio,* (*N. S.,*) 607 ; *Commissioners of New Town Cut vs. Seabrook,* 2 *Strob., L. R.,* 565 ; *Sedgwick on Statutory and Constitutional Law,* sec. 129.

Upon the adoption of the new Constitution the old ceased to have vitality; all officers holding by virtue of its provisions fell with it, and, but for the provision in the new, continuing them, they would cease to have power. The constables come within the scope of this principle.

Article XV, sec. 3, of the present Constitution provides, that " The Governor, and all officers, civil and military, now holding office under this State, whether by election, or appointment, shall continue to hold, exercise and discharge the duties of their offices, (unless inconsistent with, or otherwise provided in this Constitution,) until they shall be *superseded* under its provisions, and until their successors shall be duly qualified."

Constables are continued in office by the terms of this provision, as they are officers of the State.

The question is, how long and upon what terms they are continued. The plain answer is, they hold their offices until they are *superseded* by the machinery provided in the new Constitution. When the powers given by that instrument

are so exerted as to bring new officers into being, the old go out of power,—they are *superseded.* *Watkins vs. Watkins,* 2 *Md. Rep.,* 341; 24 *Md. Rep*., 202.

The grant of power to the Mayor and City Council of Baltimore to appoint constables is general; it vests in them by virtue of the Constitution, without limit as to time. It may, therefore, be exercised at any time. 1 *Story on the Constitution,* secs. 424, 425.

The view of the Constitution thus presented, is derived from the plain import and ordinary meaning of the words used in the instrument, and, in interpreting a Constitution which has been established by the direct vote of the people, this is the paramount rule to be observed. *State vs. Mace,* 5 *Md. Rep.,* 351; *Bandel vs. Isaac,* 13 *Md. Rep.,* 223; *Gibbons vs. Ogden,* 9 *Wheaton,* 1; 1 *Story on the Constitution,* secs. 424, 425, 426, 427; *Greencastle Township vs. Black,* 5 *Ind.,* (*Porter,*) 557; *Sedgwick on Statutory and Const. Law,* 129.

By reference to other parts of the Constitution, it will be seen that when the design was to extend the term of the officer to the end of his old term, the general continuing clause was not relied on solely. *Art. 2, sec. 2.*

Nowhere does the general continuing clause operate to continue an officer to the end of his term. The fact that the provision for appointing the officers is the same in both Constitutions can make no difference. It is merely accidental. *Art. 4, sec. 42, in relation to Justices of the Peace; Art. 6, secs. 1 and 2, of Con. of 1864 and 1867; see Art. 6, of 1867, in connection with Art. 6, of 1864; see in connection, Art. 4, sec. 14, of Con. 1851, and Art. 4, sec. 29, of Con. of 1864; Art. 4, sec. 25, of Con. of 1867; see provisions for continuing officers in Con. of 1864.*

In the Constitutions of 1851 and 1864, the general provisions continuing all officers are different from those in the present Constitution. The old Constitution provided for the continuing of the officers, "according to the present tenure," and this created the doubt under the old. These words are

left out of the present Constitution; hence, there is no longer doubt. But under the old, judicial decisions have fully determined the meaning of the continuing clause, to be according to the view here taken. *Con. of* 1851, *Art.* 10, *sec.* 2; *Con. of* 1864, *Art.* 12, *sec.* 6; *Con. of* 1867, *Art.* 15, *sec.* 3; *Watkins vs. Watkins,* 2 *Md. Rep.,* 341; *Bradford vs. Jones,* 1 *Md. Rep.,* 370.

But if the newly appointed constables were old constables, their acceptance of the new commissions was, in law, a resignation of the old term, and in case of vacancy, the new appointments must be for a new term, under the new Constitution, because the provision continuing officers applies only to those in office when the new Constitution went into effect. Either the vacancy must be filled for the whole term, or not at all. The Constitution does not continue the term, but the officers.

But concede the office was not vacant at the time of the appointment, it was not necessary to wait until the old term had expired to make the appointment. *Pratt vs. Allen,* 13 *Conn.,* 119; *Marshall vs. Harwood,* 5 *Md. Rep.,* 423.

Second. The ground assumed by the Court below: Were the powers vested by the Constitution in the Mayor and City Council of Baltimore, in abeyance until the election, provided for by the Constitution, of city officers?

The petition of the appellants takes the ground that there has been no *interregnum* in the city government; that the persons who held office as Mayor and Council, when the Constitution went into effect, were continued by that instrument, either by express provision, or general implication. It is true the Mayor and Council are mere creatures of the statute law, and may not possibly be referred to in the general continuing clause in the new Constitution, but, as the Constitution, by express provision, continues all the statute law, both of the city and State, this express provision will continue these officers in power. But this express provision is not necessary, because the Constitution does not repeal the statute law, except

as it may be inconsistent therewith. *Art.* 5, *Bill of Rights; Art.* 11, *sec.* 8 ; *Code, Public Local Laws, Art.* 4, *secs.* 1 *to* 33, *inclusive.*

The question is, what is the object designated as "The Mayor and City Council of Baltimore," in Art. 4, part 6, sec. 42? The city of Baltimore is incorporated by law. The corporate name is "The Mayor and City Council of Baltimore." By that designation every statute referring to them invests them with power. *Code, Public Local Laws, Art.* 4, *City of Baltimore, sec.* 1 *to* 33 ; *Angell & Ames on Corporations, sec.* 18.

The mode in which they exercise all powers confided to them by law, when no special mode is expressly provided in the grant of power, is prescribed by general statute. When power is given them to appoint to office, and the mode of making the appointment is not designated, a general statute provides for the exigency. *Code, Public Local Laws, Art.* 4, *secs.* 25 *and* 33.

The Mayor and City Council of Baltimore is a public corporation, vested with the franchise of governing the city of Baltimore. It subsists under that name, as a body politic, with power to maintain perpetual succession, and to do all such corporate acts as are intrusted to it. The two former Constitutions, as well as this, recognize it under this name as part of the State government, exercising delegated political powers for public purposes. *Constitution of* 1867, *Art.* 1, *sec.* 3, *Art.* 4, *sec.* 31 ; 2 *Black. Com.*, 37 ;. *The Regents of the University of Md. vs. Williams*, 9 *G. & J.*, 407 ; *Mayor and City Council of Baltimore, Garn. of Brashears, vs. Root*, 8 *Md. Rep.*, 95 ; *Mayor and City Council of Baltimore vs. State, ex rel. of the Board of Police of Balt.*, 15 *Md . Rep.*, 383, 386, 462 ; *The People vs. Morris*, 13 *Wen.*, 325 ; 2 *Kent Com.*, 267 ; *Vin ab.*, (a 2 ;) *Tit. Corporations ; Roberts vs. Gibson's Ex'r, et al.*, 6 *H. & J.*, 116,

The Constitution then, when it confers powers upon the Mayor and City Council of Baltimore, must be understood

to follow the course of all legislation, in giving that power to the corporate authority of that name, to be exercised as their corporate powers prescribe.   Certainly it will be so intended, unless there is some clear expression to the contrary. If this is the case, the question as to who, at a particular time, fill the offices of the corporation, cannot effect its identity.

The provisions in the 11th Article of the Constitution, in regard to the election of city officers, have no stronger force than would an Act of the Legislature.   Both would be the paramount law for the city.   The Constitution leaves it with the Legislature to repeal these provisions as they are in fact nothing more than substitutes for Article 4, secs. 12, 13, 14, 15 and 16 of Public General Laws, in language similar to those sections.

The city charter is not repealed or recreated.   The old charter continues, and the old officers are officers under the present Constitution.   In section 5, of Article 11, their existence is recognized, and their powers restricted.

There would be strange incongruity if the Mayor and City Council could not wield the powers of the new Constitution until the new officers went into power, but, up to that time, the powers only of the old.   The newly elected Mayor went into office on the first Monday in November, and the City Council on the 4th Wednesday in October.   If Mayor Chapman, as soon as the election was over, upon emergency, had called together the newly elected Council, upon this theory, the corporation could neither have wielded the powers of the old nor the new Constitution.

But suppose the Constitution does not refer to the corporate authority, in giving the power of appointment, but to the persons at its head, then, the old members are officers under this Constitution, wielding all the powers of this Constitution, and this, whether we consider them as officers appointed by law, or officers under the old Constitution.

If they are statute officers, constituted by the express provisions of the Constitution continuing all laws, or by the gen-

eral implication that all laws not inconsistent with the new Constitution are continued, they are officers under the new system, and have all the powers which their successors could have. *The President and Selectmen of Port Gibson vs. Moore,* 13 *Sm. & Mar.,* 160; *King vs. Passmore,* 3 *T. R.,* 199; *Corporation of Colchester vs. Seaber,* 3 *Burr,* 1867; *The People vs. Conover,* 17 *N. Y.* (3 *E. D. Smith*) 64.

Suppose they are constitutional officers, and continued by the general continuing clause, the difference between this and the former Constitution must be considered. In the two Constitutions of 1851 and 1864, there is but one provision for continuing officers, applicable alike to those where the organization of the office was changed, as in the case of the Courts, and those where the organization was unchanged. In the present Constitution there are separate clauses applicable to these separate cases. Besides this, in the former Constitutions, the officers continued were to discharge their duties, "according to their present tenure." Not so in this. The Governor is continued in office by this general provision. Can he not wield the powers of the new Constitution? Can he not make appointments? Can he not wield the veto power?

But the decisions under the old Constitution do not warrant the presumption that the old officers continued by these provisions, do not wield the powers of the Constitution continuing them. *State vs. Manly,* 1 *Md. Rep.,* 135; *Watkins vs. Watkins,* 2 *Md. Rep.,* 341; *Bradford vs. Jones,* 1 *Md. Rep.,* 370.

*William M. Busey* and *Wm. Pinkney Whyte,* for the appellee.

It appears from the proceedings below, and the facts as disclosed by the agreement, that there are two sets of appointees claiming to exercise the office of constables in the city of Baltimore, and to determine which of these parties can rightfully exercise such office, is the object of this appeal. Its determi-

nation depends upon the construction of section 42 of Article 4, and section 3 of Article 15, of the Constitution of 1867. The former provides for the appointment of constables by the Mayor and City Council of Baltimore for two years, and the latter " continues " in office the then officers of the State, " to hold, exercise, and discharge the duties of their offices (unless inconsistent with, or otherwise provided in this Constitution,) until they shall be superseded, under its provisions, and until their successors shall be duly qualified."

The present Constitution took effect on 5th October, 1867, and under its provisions, on the 23d of October, 1867, the Mayor and City Council of Baltimore were elected, and superseded those holding office on the 5th of said month.    The petitioners, having been appointed on the 8th October, 1867, by the outgoing Mayor and City Council of Baltimore, prior to the expiration of their term of office, which did not take place till the 18th of November, 1867, they were unlawfully appointed, and have no right to exercise the duties of said office of constable.

It is conceded, that under the provisions of the Constitution, the constables could not be removed, except for cause, and in the manner presented by the 42d section of Article 4. They were therefore continued in their offices, as well as the Mayor and City Council of Baltimore, until superseded, as provided in the Constitution — that is, " they had all the powers which were given to them by the old Constitution and the laws under it, to be exercised in the same manner, unless altered by some clear and manifest provision in the new Constitution." *State vs. Manly,* 1 *Md. Rep.,* 140.

There was no such alteration in the new Constitution, but they were to continue till superseded by officers appointed by the Mayor and City Council of Baltimore.    What Mayor and City Council of Baltimore?    Was there any such Mayor and City Council of Baltimore, designated in the Constitution itself?    The 11th Article of the Constitution provided for the election of such Mayor and City Council of Baltimore,

with limitations on their power, different terms of office, and new duties, as distinguished from those created by law and holding office under the old Constitution.

These were to be the depositaries of power and government in the City of Baltimore, and to them, it was intended by the framers of the Constitution, to confide the appointment of constables to *supersede* those holding under the provisions of the Constitution of 1864.

In construing a Constitution, we must take into consideration the circumstances which attended its adoption, and what appears to have been the understanding of those who endorsed it with their approbation. *State vs. Mace,* 5 *Md. Rep.,* 351; *Bandel vs. Isaac,* 13 *Md. Rep.,* 223; *Buckingham vs. Davis,* 9 *Md. Rep.,* 324, 328; *Mayor, &c. of Baltimore, vs. State, ex rel. of the Board of Police of Baltimore,* 15 *Md. Rep.,* 376, 461.

Can there be any doubt that the framers of the Constitution, and the people who approved it, meant to supersede all officers then exercising their offices under the provisions of the old Constitution by those who were to be elected or appointed under the authority of the new Constitution? And can it be further doubted, that the Mayor and City Council of Baltimore, in whose hands was lodged the power to appoint constables under the new Constitution, was that body, created by the terms of that new Constitution, and not the old incumbents, for whose amotion from office, Article 11 had been expressly inserted in that instrument? *Proceedings of Maryland State Convention,* 1867, *pp.* 196, 213, 232, 253, 285, 293, 370.

BARTOL, C. J., delivered the opinion of this Court.

This is an application by the appellants for the writ of *mandamus* to *oust* the appellee from the office of constable of the nineteenth ward of the city of Baltimore.

It appears from the record that the appellants claim the office in question by virtue of an appointment for two years, made by the Mayor and City Council, on the 8th day of October, 1867. They were commissioned, gave bond and

took the oath of office as prescribed by the Constitution and laws. The Mayor and City Council elected under the provisions of the Constitution of 1867, considering that the appointment of the appellants made by their predecessors was invalid, on the 21st day of November, 1867, appointed the appellee to the office, to hold for two years from that date, and he having been commissioned and qualified according to law, claims to be legally entitled to the office. The single question therefore which is presented by this appeal is the legality of the appointment of the appellants, made on the 8th day of October, because if that be valid, they are entitled to the writ, as no more than two constables can be lawfully appointed for the nineteenth ward at the same time.

The decision of this question depends upon the true construction of the provisions of the new Constitution, which went into operation on the 5th day of October, 1867. Under the Constitution of 1864, Art. 4, sec. 47, the apellants Smith and Davis, had been appointed constables, the former for the 15th ward and the latter for the 19th ward; their appointments were made on the 18th day of November, 1865, for two years, they were in office at the time the new Constitution went into operation. By Art. 15, sec. 3, it is provided that "The Governor and all officers, civil and military, now holding office under this State, whether by election or appointment, shall continue to hold, exercise and discharge the duties of their offices (unless inconsistent with, or otherwise provided in this Constitution) until they shall be superseded under its provisions, and until their successors shall be duly qualified."

Under this provision, the appellants were continued in office, not until the end of the term for which they had been originally appointed; but "until they should be superseded under the provisions of the new Constitution." That is until new appointments should be made, in the manner and by the authority prescribed in the new Constitution, for the appointment of constables. See *Watkins vs. Watkins,* 2 *Md. Rep.,* 341;

*Taylor vs. Hebden*, 24 *Md. Rep.* 202. From the principles established by these decisions it follows that after the new Constitution went into effect, the appellants might at any time have been displaced or superseded by the appointment and qualification of others in their place, or by the re-appointment of themselves in the manner and for the term prescribed in the new Constitution.

No valid objection therefore can be made to the appointments of the 8th day of October, on the ground that the term for which the incumbents had originally been appointed had not expired. They were not continued in office till the end of that term, but until superseded.

Were they then legally superseded by the appointments of the 8th of October, the acceptance by them of their new commissions and their qualifications thereunder? This is the point upon which the decision of this case must turn. Had the Mayor and City Council the power to make that appointment on the 8th day of October?

The Constitution, Art. 4, sec. 42, provides that "The Mayor and City Council of Baltimore shall appoint such number of constables for the several wards of the city of Baltimore, as are now, or may hereafter be prescribed by law, who shall hold their office for two years." This clause confers upon the Mayor and City Council the power of making the appointment, in the plainest and most comprehensive words. But it has been argued that the power thus conferred could be exercised only by the new incumbents of the offices of Mayor and City Council, whose election was provided for in the instrument, and who were to go into office on the first Monday of November thereafter. This argument is unsupported by any thing contained in the section conferring the power. The words are general and unrestricted, and in respect to the exercise of the power make no distinction between the Mayor and City Council then in office and those who were to succeed them.

The argument has been based upon the words of the continuing clause already cited. Under that clause, the Mayor and City Council then in office, were continued in office until superseded by the election and qualification of their successors as provided in the 11th Article.

By force of these provisions the then existing Mayor and City Council were continued in office from the 5th day of October, till the first Monday in November, clothed with the powers then appertaining to their offices. But it is said their official powers and duties during that period, were such only as they possessed under the old Constitution, and not such as appertained to their offices under the Constitution of 1867. If this be so, then they had no power to make the appointments on the 8th day of October; for the power of superseding incumbents in the office of constable was conferred upon the Mayor and City Council by the new Constitution only, and did not before exist. We proceed then to consider the nature of the powers and duties belonging to the old Mayor and City Council, while they remained in office after the new Constitution went into effect.

The effect of the adoption and promulgation of the Constitution of 1867, was to repeal and abrogate the pre-existing Constitution; and, therefore, all officers whether continued in office by its provisions, or elected under it, could hold and exercise only those powers which it authorizes, and in the manner it prescribes. This is, upon general principles, the effect of every repealing statute; the law repealed is abrogated and annulled, and is regarded as if it never existed. *Key vs. Godwin*, 4 *Moore & Payne*, 341; *Sedgwick on Stat. and Const. Law*, 129.

The same principle applies to the repeal of a State Constitution, which is the organic law. Where the new Constitution, however, by its terms, continues in force or operation any provisions of the old, such provisions are made *pro hac vice* parts of the new. An example of this may be found in the 2d sec. of the 15th Art., which declares that "the several

Courts, existing at the time of the adoption of this Constitution, shall, until superseded under its provisions, continue with like powers and jurisdiction, and in the exercise thereof, in all respects, as if this Constitution had not been adopted."

By this clause we would be bound to look at the provisions of the Constitution of 1864, to ascertain the jurisdiction and powers possessed by the several Courts continued in operation, in the interval between the adoption of the new Constitution, and the organization of the new Courts therein provided for. But in sec. 3, Art. 15, the general continuing clause applicable to other officers, there are no such provisions. They are "*to hold, exercise and discharge the duties of their offices,* until they shall be superseded." That is all the duties which by the existing Constitution and Laws, appertain to the offices they hold ; not those which appertained to them by the pre-existing Constitution which has been repealed. The words (unless inconsistent with, or otherwise provided in this Constitution,) are evidently designed to qualify the whole sentence ; they mean that the officers shall hold over until superseded, unless it is otherwise provided in the Constitution, as where offices are abolished ; and they apply also to the duties to be discharged, these continue the same as before, unless the new Constitution provides otherwise ; thus conclusively showing where the duties have been changed, other duties imposed or other powers conferred, we are to look in the provisions of the new Constitution, under which the officers are continued, to ascertain their nature, extent and limitations.

This construction is the more manifest, when we refer to other parts of the Constitution. The Governor was continued in office, under the same clause we have been considering. The 2d Article prescribes the duties and powers of the Governor, among them are new powers not conferred by the Constitution of 1864, such as the veto power. There can be no doubt that these may be exercised by the present Governor, though he is an officer continued in office. The construction of the 3d sec. of Art. 15, contended for by the

appellee, would limit the powers of the present executive, to such as were conferred by the Constitution of 1864; contrary to the plain and manifest meaning of the Constitution.

The only difference between the case of the Governor and that of the Mayor and City Council of Baltimore, so far as this question is concerned, consists in the fact that the Governor is continued in office for a longer period. The words of the Constitution so far as they provide for his continuance in office, are the same. The provisions of the 2d Article, enumerating the powers and duties of the Governor, are no more general and unrestricted than those found in the 42d sec. of the 4th Art., conferring on the Mayor and City Council of Baltimore, the power to appoint constables; and in each case, it seems to us clear from the plain language of the Constitution, that the officers continued in office under the 3d sec. of the 15th Art., may exercise all the powers appertaining to their respective offices under the new Constitution.

The municipal corporation known as the Mayor and City Council of Baltimore, was not for the first time created by the Constitution of 1867. It had existed for many years as a continuing body, established by law. The 11th Article of the Constitution of 1867, recognizes its existence, provides for an election of a Mayor and City Council to succeed those then holding those offices, and prescribes when the new officers so elected shall enter upon the discharge of their duties. By the general continuing clause, the corporation officers were continued in office till that time. During that period they were in office under the provisions of the new Constitution, charged with the duties and clothed with all the powers appertaining to their offices, prescribed and conferred under the existing Constitution and laws; among these is the power to appoint constables, conferred in the plainest and most unqualified terms by the 42d sec. of the 4th Art. There is nothing in the Constitution which authorizes this Court to say, that this power could only be exercised by their successors in office. It is said the Convention so intended. If that be so then *quod vo-*

*luit non dixit.* It is no where so expressed. In construing the instrument, our duty is to interpret it, according to its language; where that is plain and unambiguous, we are not at liberty to conjecture what may have been the possible intentions of its framers, not expressed in its language. This is a cardinal and universal rule of interpretation. *Bosley vs. Mattingly,* 14 *B. Monroe,* 89 ; *Fisher vs. Blight,* 2 *Cranch.,* 358, 399. We have examined carefully the case of *The State vs. Manly,* 1 *Md. Rep.,* 135, which was cited by the appellee, and do not understand it as establishing any doctrine in conflict with the views we have expressed.

The decision in that case was that the removal of a cause from Baltimore City Court, and the recognizance of the party to appear before *"Howard County Court"* were null and void, there being no such Court in existence. That decision does not touch the point involved in this case. In the opinion delivered by Judge ECCLESTON, he considered the construction of Art. 10, sec. 8, of the Constitution of 1851, which was similar though not identical with the continuing clause in the Constitution of 1867.

The learned Judge said : "That it could only be gratified to any practical useful extent by giving it the construction that the officers continued, had all the powers which were given them by the old Constitution and the laws under it, to be exercised in the same manner, unless altered by some clear and manifest provision in the new Constitution." The subject he was considering was the powers or rather the name of the "Court of Howard District of Anne Arundel county" as affected "by the provisions of the Constitution of 1851, which erected Howard District of Anne Arundel county into Howard county." In construing Art. 8, sec. 1, he held "that the old Court of Howard District of Anne Arundel county was continued in office *as such* until the election and qualification of officers under the new Constitution." Thus giving to that provision, so far as Howard county was concerned, the same meaning as is plainly expressed by the 2d sec. of Art. 15, of

Smith and Davis *vs.* Thursby.

our present Constitution in relation to the Courts. Taking together the two sections of the Constitution of 1851, which the learned Judge was considering, there is nothing in the conclusions stated by him which it is necessary for us to question or impugn in deciding the present case. The continuing clause in the Constitution of 1851, contained the words "according to their present tenure," which are not found in the 3d sec. Art. 15, of the Constitution of 1867, and their omission may justify a different interpretation of the clause without impugning the reasoning of the learned Judge in *The State vs. Manly.* The decision of the Court however in that case did not rest upon the construction of the continuing clause alone, and cannot therefore be considered as a controlling decision in the present case, where we are called on to construe other and widely different constitutional provisions.

We have been fortified in the conclusions we have reached on this subject, by the decision of the Court of Appeals of New York in *The People vs. Connover,* 17 *N. Y. Rep.,* 64. That was a case very similar to the present. By a statute passed in June, 1857, provision was made for the re-organization of the city government of New York. The law provided for an election of a new Mayor and Aldermen, and continued in office for the mean time the then Mayor and Aldermen.

The same law conferred in general terms upon the Mayor and Aldermen, new powers not before possessed, among them the power to appoint a Street Commissioner and repealed preexisting laws.

The officers thus continued in office proceeded to make an appointment of Street Commissioner, and the validity of the appointment was questioned, on the ground that such appointment could only rightfully be made by the new Mayor and Aldermen who were to come into office under the Act. But the whole Court were of opinion the appointment was legal. The reasons stated in the opinion of the Court are

·very clear and to our minds quite conclusive and altogether .applicable to the case before us.

For the reasons already stated, this Court is of opinion that the Mayor and City Council of Baltimore, had the constitutional power to make the appointments of the appellants on the 8th day of October, and the judgment of the Superior Court must therefore be reversed.

*Judgment reversed and*
*cause remanded.*

(Decided 14th February, 1868.)

NELSON, J., delivered the following dissenting opinion:

This is an appeal from a judgment of the Superior Court of· Baltimore city, refusing the writ of *mandamus* and dismissing the petition of the appellants.

The agreed facts, as we find them in the record, are that on the 18th day of November, 1865, the appellants were appointed by the then Mayor and City Council of Baltimore, constables, one for the 15th and the other for the 19th ward of said city, to serve as such for two years from that date; that they were commissioned, gave bond, took the oaths, as prescribed by the Laws and the Constitution of 1864, and entered upon the discharge of the duties pertaining to said office; that they were holding said offices of constables, under said appointment, on the 8th day of October, 1867, and had not resigned said offices at that time, or at any time since then; that on the said 8th day of October, 1867, three days after the Constitution of 1867 was adopted and went into operation, the then Mayor and City Council, whilst the appellants were still holding their offices under the appointment of 18th of November, 1865, appointed them to the same offices for the 19th ward of the city, to serve for two years. It is further agreed that the new Mayor and City Council of Baltimore, elected under the provisions of the Constitution of 1867, on the 21st day of November, 1867, appointed, and the Mayor commissioned, as constables for the

same ward, the 19th, the appellee, and that he qualified and bonded under the present Constitution and Laws, and entered on the discharge of his duties as such constable. The question submitted to this Court for solution is, which of these parties is entitled to hold and exercise the office of constable for the 19th ward of the city of Baltimore? Its solution depends upon a proper interpretation of the Constitution, and it may be well to enquire, by what rule of construction the Court should be governed in giving an interpretation to that instrument. There are many rules laid down for our guidance, sometimes we are to be governed by the rule which requires a strict construction, sometimes by the rule which requires a large or liberal construction, depending upon the object the legislators had in view in framing, and the circumstances surrounding the instrument. The Court of Appeals have given us the rule by which we are to be governed in the construction of such an instrument as we have now before us. Chief Judge LE GRAND, delivering the opinion of the Court in the case of *The State vs. Mace*, 5 *Md. Rep.*, 350, says: " We think the Constitution ought to have a common sense interpretation, by which we mean the sense in which it was understood by those who adopted it. Although it is a well recognized canon of construction, that when legal terms are used in a *statute*, they are to receive their technical meaning, unless the contrary plainly appears to have been the intention of the Legislature, the principle, however, does not apply to the interpretation of the organic law, which is to be construed, according to the acceptation of those who adopted it, as the supreme rule of conduct both for officials and individuals." What did the framers of this instrument mean when they gave it to the people for their adoption or rejection? Did they mean that the Mayor and Council of Baltimore, whom they had retained in office for a limited time, that the wheels of government should not stop, should exercise their reserved powers in such mode as to defeat that provision, which provides that all officers should be superseded, when others should

be elected or appointed to take their places? For it is manifest from the 1st section of the 11th Article, they intended to supersede them by the election of a new Mayor and Council to whom they gave "such powers" as was then or might thereafter be prescribed by law; among those powers, was the power to appoint constables for the wards of Baltimore city. What did the people, those who voted for and adopted the 42d sec. of Art 4, and the 3d sec. of Art. 15, understand those sections to mean? What was their intent when they adopted them as part of the organic law? Did they understand and mean that the Mayor and City Council, retained in power only to exercise the duties of their offices as they then held them, with no new or other duties conferred, and who were holding their offices by the mere sufferance of the Convention, should seize upon new power and put into place the officers who by the 3d sec. of the 15th Art., they determined and declared should be superseded? Or did they understand and mean that those sections should rid them of the then Mayor, City Council and all their appointees? I cannot doubt for a moment they understood and meant the latter. But it is not necessary to invoke this rule; there is sufficient on the face of the instrument to show what was intended by its framers. The Mayor and Council, in office at the time of the adoption of the present Constitution, had once had the power to appoint constables to serve for two years; they had exercised that power on the 18th day of November, 1865, and exhausted it, they had no power any where given them to make other appointments till two years from that date had expired; and when the present Constitution provided that their appointees should be superseded, they could hardly have meant that the then Mayor and Council should have the power given them to defeat that provision by re-appointing them for two years longer, and thus deprive the Mayor, they had provided should be elected in October, of all power to select his own subordinates.

It is argued by the counsel for the appellants that on the 5th day of October, 1867, when the present Constitution went into operation, the Constitution of 1864, was abrogated and annulled, and that the Mayor and Council then in office were immediately invested with all the powers under that Constitution, given to the Mayor and City Council of Baltimore, and among them to make new appointments to office. This is in direct conflict with the 3d sec. of the 15th Art.; that section provides that all officers now holding office, whether by election or appointment, *shall* continue to hold until they shall be superseded under its provisions; where then does this Mayor get his power to appoint to these offices of the 19th ward; those offices were filled, and the Constitution said they should hold on until superseded; and just here let us enquire how the Convention intended they should be superseded; is it not manifest they intended they should be superseded by officers appointed by the Mayor and Council, who should be elected on the fourth Wednesday of October, 1867? They had given to him, when he should come into office, all the powers that was then or might thereafter be prescribed by law, and the power to appoint constables was among the powers given.

It is in conflict too with the decision of the Court of Appeals, and, therefore, unsound. In the case of *The State vs. Manly*, 1 *Md. Rep.*, 140, Judge ECCLESTON, construing the same words of the 3d sec. of Art. 15, of the present Constitution, says: "The expression 'all civil and military officers holding commissions under this State, shall continue to hold and exercise their offices, according to their present tenure, until they shall be superseded,' can only be gratified to any practical, useful extent, by giving it the construction that they had all the powers which were given them by the *old Constitution* and the laws under it, to be exercised in the same manner, unless altered by some clear and manifest provision in the new Constitution." Is there in the present Constitution any "clear and manifest provision" to alter the manner of

exercising the reserved powers, by the Mayor and Council, under the Constitution of 1864?

This decision clearly repudiates the assumption that the old Mayor and Council held new powers under the present Constitution; they held the powers which had been given them by the old Constitution of 1864, and which were reserved to them by the present one. They had been given the power to appoint these constables for two years by the Constitution of 1864; they exercised that power and it was sound; the Mayor and Council were themselves to be superseded before the two years expired, and they could no longer wield that power of appointment. They could not have dismissed them; they had not resigned; they were continued in office as the Mayor and Council were, only to prevent an *interregnum*, and that the wheels of government might not stop.

Again, it is contended by the appellants, that "if the newly appointed constables, meaning the constables appointed by the late Mayor and Council, were old constables, their acceptance of the new commissions was, in law, a resignation of the old term, and in case of vacancy the new appointments must be for a new term, under the new Constitution, because the provision continuing officers applies only to those in office when the new Constitution went into effect. Either the vacancy must be filled for the whole term or not at all. The Constitution does not continue the term, but the officers." We confess we do not see the force of this reasoning. When the Mayor and Council were about to appoint the appellants to office on the 8th of October, 1867, there were two acts to be done and two parties to do them; the appointment by the Mayor and Council and the resignation by the constables, one act must have preceded the other, which took place first? Was the appointment by the Mayor and Council the first? then it was void because the offices were filled and he could not appoint as we have shown. Was the resignation the first? then there was a vacancy and the then Mayor and Council could only fill it for the residue of the term, which the resign-

ing officer had to serve, under his appointment of 1865. But say the counsel "concede the office was not vacant at the time of the appointment, it was not necessary to wait until the old term had expired to make the appointment."

*Pratt vs. Allen*, 13 *Conn.*, 119, and *Marshall vs. Harwood*, 5 *Md. Rep.*, 423, are cited to sustain this proposition; when these cases come to be examined it will be found they sustain no such principles. The case referred to in 17 *N. Y. Rep.*, I do not regard as an authority in this Court on this subject, before us, more especially as it conflicts with the principle settled in the case of *The State vs. Manly*, decided by the Court of Appeals of this State.

But suppose I am mistaken in these views, and that the late Mayor and City Council of Baltimore, derived their powers from and under the new Constitution and there was not (as there really was not) any vacancy in these offices, in what section of that Constitution do the Mayor and Council find their power to vacate these offices?

They had been appointed for two years, their time had not expired, the power was not in the Mayor and Council to turn them out, that power belonged to the Court having criminal jurisdiction, the Constitution provided they should hold their offices until superseded, did that instrument give or intend to give the then Mayor and Council power to turn them out, (I say turn them out, for if he could make new appointments for a new term, he could as well have appointed *others* as those then holding,) did they mean that the then Mayor and Council should be the agents to supersede them? If they did so mean, the Mayor and Council have greatly violated their duty, for instead of superseding them, they have added two years to their term of service, and kept them in the very places they were to leave upon being superseded by their successors. We think the present Constitution gave the Mayor and Council no such power. If there had been a vacancy, and the then Mayor and Council possessed powers, as claimed for them under the Constitution of 1867, the question would be different, the 43d

sec. of the 4th Art. is in these words: "In the event of a vacancy·in the office of a justice of the peace, the Governor shall appoint a person to serve, as justice of the peace, for the residue of the term : and in case of a vacancy in the office of constable, the County Commissioners of the county in which the vacancy occurs, or the *Mayor and City* Council of Baltimore, as the case may be, shall appoint a person to serve as constable *for the residue* of the term." ·It is contended, as I have before said, that if these constables accepted the new appointment of the Mayor and Council it created a vacancy. How was it to be filled ? By giving them an appointment for two years ? Certainly not, for that would violate the section of the Constitution referred to, because that says they should be appointed for the residue of the term of the resigning or vacating officer. But these offices were not vacant, the incumbents had not been dismissed by the Court; it is admitted in the record that at the time of the appointment on the 8th of October, 1867, these constables, the appellants had not resigned nor have they at any time since. Then by what authority did the Mayor and City Council make these appointments on the 8th of October, 1867. We can see none, we think they transcended their powers, therefore I agree with the Court below and think their judgment ought to be affirmed.

STEWART, J., delivered the following dissenting opinion:

The question in this case, involves the construction of the organic law of the State, and entertaining very decided views in regard to it, different from a majority of the Court, I deem it proper, to file a brief statement of some of the grounds of my opinion, in addition to those advanced by Judge NELSON, that the judgment of the Court below ought to be affirmed.

The Constitution has been ordained by the people, to establish the basis of their State government, by suitable general provisions; and its purpose was not to deal in minutiæ or redundancy of arrangement, but provide outlines, by com-

Smith and Davis *vs.* Thursby.

prehensive rules, defining limits for the different departments, and creating the grand agencies, to perform the duties prescribed.

When undergoing judicial investigation, if there be any apparent ambiguity, and the meaning of any part is to be defined, reference to the purport of the whole instrument must be made, in order to deduce the sense of that particular part.

The entire aggregation of Articles and sections, has a general design, and every Article and section should correspond, if that can be accomplished, by any reasonable construction.

If the language of any part be doubtful, it must be interpreted, by every fair intendment, to harmonize with the main purpose, and not to defeat it.

" Such construction should be given, as that one clause, shall not frustrate, but explain another."    *Dwarris on Statutes.*

" In construing a Constitution, we must take into consideration the circumstances which attended its adoption, and what appears to have been the understanding of those who endorsed it, keeping always in view the proper office of a Constitution, which is to declare *general rules and principles.*"

" Constitutions are not to be interpreted according to words used in particular clauses. The whole must be considered, with a view to ascertain the sense, in which the words were employed."

" It, unlike the Acts of the Legislature, owes its whole force and authority, to its ratification by the people, and they judged of it, by the meaning apparent on its face." *Manly vs. State,* 7 *Md. Rep.,* 135, 147 ; *Bandel vs. Isaac,* 13 *Md. Rep.,* 223 ; *State vs. Mace,* 5 *Md. Rep.,* 337 ; *Groves vs. Slaughter,* 15 *Peters,* 449.

The Constitution of 1867, provided a system of government without suffering an *interregnum,* in making the *transit* from the preceding, and its provisions must be construed, with reference to that consideration also.

Art. 5, of the Declaration of Rights, secures to the inhabitants of Maryland, amongst other matters, "all Acts of Assembly in force on the 1st of June, 1867, except such as may be *inconsistent with the provisions of the Constitution.*"

Art. 11, sec. 1, provides that the *inhabitants of the city of Baltimore,* shall, on the fourth Wednesday of October, 1867, elect a Mayor to serve for four years, and secs. 2 and 3, members of the City Council. The 8th section continues laws and ordinances, now in force, *not inconsistent with this Article.*

Art. 5, of the Bill of Rights, applies generally *to all the inhabitants of the State,* and guarantees to them *all the laws therein* specified, *not inconsistent with the Constitution,* whilst Art. 11, refers specially *to the inhabitants of the city of Baltimore,* and secures to them by the 8th section of that Article, *all the laws and ordinances of that city, not inconsistent with that Article.*

Without this special 11th Article, the city of Baltimore, under the said 5th Article, of the Bill of Rights, would have retained their corporate franchises, and been entitled to elect a Mayor and Council under the existing laws, and the officers of the corporation would have been continued, unless *inconsistent with other portions of the Constitution,* in the exercise of all their functions.

In such case, they would have been continued, under the provisions of the Bill of Rights, and not under Art. 15, sec. 3, which relates to *State officers,* and not to the *officers* of a mere *municipality.*

Art. 4, sec. 42, provides "that the County Commissioners, and the Mayor and City Council of Baltimore, respectively, shall appoint such number of constables, for the several election districts of the counties and wards of the city, as are now or may hereafter be prescribed."

Sec. 43, of the same Article, provides "in case of a vacancy in the office of constable, the County Commissioners or the Mayor and City Council of Baltimore, as the case may be, shall appoint a person to serve as constable, for the residue of the term."

Smith and Davis *vs.* Thursby.

Under this Art. 4, secs. 42 and 43, giving authority to the Mayor and Council of Baltimore, to appoint constables for that city, the existing Mayor and Council, would have possessed that authority, in the absence of any provision to the contrary, but Art. 11, having, by distinct and specific provision, recognized the city of Baltimore, and modified the charter of that city, and provided for the election of a Mayor and Council, and by the 8th sec. of that Article, *restricted* the corporation within the limits and authority of that Article, applying as well to the officers as the ordinances of that corporation, indicates the Mayor and City Council, elected thereunder, as the officers, to discharge the duties required by Art. 4, secs. 42 and 43.

By transposing the 42d and 43d secs., of the said 4th Art., and immediately connecting them with the 11th Art., we find the Mayor and Council referred to, because they are therein specified, and under the 8th sect. of Art. 11, any laws or ordinances of that city, or the acts of any officers thereunder, inconsistent with that Article, are prohibited. The existing Mayor and City Council are thereby restrained from exercising any authority, interfering with the powers conferred upon the Mayor and Council, to be elected thereunder. They cannot, rightfully, appoint the constables for the city; because provision is made for their appointment by the Mayor and Council, to be elected, in pursuance of the provisions of the 11th Art.

It is maintained, that the constable is a State officer, and embraced in Art. 15, sec. 3, which provides "that the Governor, and all officers, civil and military, now holding office under this State, whether by election or appointment, shall continue to hold, exercise and discharge the duties of their offices (*unless inconsistent with or otherwise provided, in this Constitution,*) until they shall be superseded under its provisions, and until their successors shall be duly qualified."

The existing Mayor and Council are as effectually restricted by this, from the exercise of any duties, where other provision is made, as under the 8th sec. of Art. 11.

Positive meaning must be given to the *restraining* language of Art. 15, sec. 3, according to all the canons of construction. The words "not inconsistent with or otherwise provided in this Constitution," are not cumulative or superfluous expressions. Their effect and operation are restrictive, and declaratory of the limitations, upon the existing officials, who are not authorized to exercise the duties of their offices, where other provision is made, in the Constitution.

The Constitution of 1851, in the continuing clause, provides that the old officers shall hold their offices "according to their present tenure," whilst that of 1867, substitutes, "until superseded."

The officers thus continued are empowered to discharge their duties, according to law with the qualifications, referred to in the 3d sec. of the 15th Art. The Constitution has amply provided, that in the proper exercise of their duties, their tenure, cannot conflict with those, provided to supersede them.

The only effect of the substitution, of the different language in the Constitution of 1867, is, to make more specific the limitation upon the old officers, which terminates upon the installation of those superseding them, whenever that may be. So long as they remain, the duties pertaining to their stations, whether under the old or new Constitution, as the latter provides, they are required to perform.

To invest the then existing Mayor and Council by *implication*, with the power to appoint the constables where express and clear provision is made by the 11th Article, for their appointment by the Mayor and Council thereby to be elected, according to my judgment, is to ignore the restraining provisions, before referred to, and they had as well be rejected as surplussage. The construction referring the appointment of constables to the Mayor and Council, provided for in the 11th Article, is in keeping with the provisions of the Constitution, gives effect to the entire language, and harmonizes with the tenor of the whole instrument. This construction is elucidated, by the character of the succession, of the State Govern-

ment, which was to be accomplished, without an *interregnum*. The necessary provisions are made, by continuing the existing officials, until the agencies of those to supersede them, had the reasonable opportunity to take charge. In the proposed change to be made in the city of Baltimore, a large corporation, with multifarious interests involved, it was not only convenient but necessary that adequate time should be provided for the induction of the officers, and this is secured by the 11th Article.

Between the 5th of October, when the Constitution was to take effect, and the 1st of November ensuing, an election was to be held, and on that day, the Mayor chosen, was to be installed, and the government of that city, placed on the basis Art. 11 of the Constitution designed.

In the interval, what reasonable time had the officers, to be superseded, to consider the claims of aspirants for the office of constable, and the Constitution had imposed no such duty upon them, because, without action on their part, those offices were occupied and constitutionally retained?

On the contrary, they were suffered to remain, for the temporary purpose of the occasion, and were not required to make appointments, but rather to be prepared themselves, to vacate their offices, when superseded by the Mayor and City Council, elected under the said Art. 11.

In the executive department, although the Constitution had provided for the election of a Governor, the existing incumbent was not to be disturbed, but was expressly recognized until the period, for which he had been chosen, should expire by its previous limitation, and during that time was possessed of all the authority pertaining to the executive department, because no provision had been made to the contrary, and such continuance was not inconsistent with any provision of the Constitution.

The State's Attorneys and the Surveyors of the counties, were not to begin their term of office until the 1st of January, ensuing. The Judges of the Courts were to qualify as

soon as possible after their election.   The Mayor and City Council of Baltimore, were to be elected on a different day from that of the general election, and the Mayor to hold his office, from the 1st of November, for four years.   All officers were to hold their places until superseded, unless inconsistent with the Constitution, or other provision was made therein.

From the general outlines, as well as from the details of the instrument, according to my apprehension, no other conclusion can be consistently deduced; that the framers contemplated a mere continuance of the existing officers, except where otherwise provided, until the officials, under the Constitution of 1867, could be installed.

Constables in Baltimore were provided to be appointed, under the 42d sec. of the 4th Art., by the Mayor and City Council, whose term of office was prescribed, being for two years, and in case of a vacancy by the 43d sec., to appoint a person to serve for the residue of the term.

Art. 11 having provided for the election of a Mayor and Council, and there being no where else, in the Constitution, any other Mayor and Council provided for the performance of the duty imposed by the 4th Art., 42d sec., the Mayor and Council elected, under the provisions of said Art. 11, are the officials designated and required to appoint the constables for that city.   But it is contended, that this is a mistaken view, and that the Constitution by the 3d sec. of 15th Art., having continued the then existing officers, until superseded, and the then existing Mayor and Council, having thus been prolonged, they are the Mayor and Council, by necessary consequence authorized to act in the matter.   Such a conclusion can only be reached by circuitous implication, and is in conflict with the express provisions of the instrument, and violates the general structure and pervading design.   The incoming Mayor and Council are clothed, with positive and prospective powers, whilst the existing Mayor and Council, are merely tolerated, temporarily, by the necessity of the occasion, in the exercise and discharge of such duties as pertained

to their station, under the provided limitation, but are not endowed with any additional or substantive powers; on the contrary, in the same section permitting them to hold over, they are limited and restrained from the exercise of any duty, inconsistent with, or otherwise provided for in the Constitution. Under the other construction, what import is given, to that portion of the Constitution, which provides, that the existing officers, shall discharge the duties of their offices, " unless inconsistent with, or otherwise provided in this Constitution?"

The existing constable is continued, as much as the existing Mayor, who cannot by virtue of the Constitution, displace the constable, before the expiration of his term, by a new appointment, because the constable holds over, by the same authority as the Mayor and Council. The Constitution having provided for the election of a Mayor and Council, who are empowered to appoint constables for the city of Baltimore, the existing Mayor and Council cannot appoint them, because they are restricted from the exercise of any authority where provision is otherwise made in the Constitution, and the said 3d sec. of the 15th Art., in the use of the restraining term, has prohibited them from exercising their antecedent powers, other provision having been made. The construction, giving the power to the then existing Mayor and Council, ignores altogether these restraining words, and interpolates into that section substantially the addition, that besides their existing power, they are given the additional authority which is expressly conferred upon those who are to supersede them. The other and natural construction gives force and effect to the entire phraseology and purpose of the instrument, retaining the agencies under the old or new system, as the case may be, without collision or embarrassment. With due deference to the different views of a majority of this Court, I have carefully examined the instrument, but am satisfied the judgment of the Court below is in harmony with the provisions, the scope and design of the Constitution.